Coleman VITAL, Plaintiff–Appellant,

v.

INTERFAITH MEDICAL CENTER and Local 1199, Defendants–Appellees.

Docket No. 98–7730.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1998.

Decided Feb. 19, 1999.

Coleman Vital, Brooklyn, NY, pro se.

Peter D. Stergios, Epstein, Becker & Green, New York, NY (Sean T. Granahan, Epstein, Becker & Green, New York, NY, of counsel), for Defendant–Appellee Interfaith Medical Center.

Pamela Jeffrey, Levy, Ratner & Behroozi, P.C., New York, NY, for Defendant–Appellee Local 1199.

Before: KEARSE, STRAUB, and SACK, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff Coleman Vital, *pro se,* appeals from a judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*), dismissing *in toto* his action for employment discrimination brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Specifically, the District Court (1) dismissed Mr. Vital's claim against Defendant–Appellee Local 1199, National Health and Human Service Employees Union ("Local 1199") on the pleadings [1] and (2) dismissed Mr. Vital's claim against Defendant–Appellee Interfaith Medical Center ("IMC") on summary judgment. We approve the District Court's dismissal of Mr. Vital's claim against Local 1199 on the ground that the union was not named in the charge that Mr. Vital filed with the Equal Employment Opportunity Commission ("EEOC") or in the right to sue letter that Mr. Vital received from the EEOC. However, we hold that the District Court erred in granting IMC summary judgment on two grounds: first, because there is no indication in the record that Mr. Vital had been informed or was otherwise aware of the nature and consequences of a summary judgment motion and, second, because the District Court inappropriately resolved an issue of material fact.

We therefore affirm in part, reverse in part, and remand.

---

1. Local 1199 initially styled its motion as one brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and the District Court referred to it as such in its opinion. However, because Local 1199 filed the motion in lieu of an answer, the motion is properly brought pursuant to Rule 12(b)(6), as Local 1199 recognized in its reply memorandum in support of the motion. This distinction is unimportant on this appeal.

## BACKGROUND

Mr. Vital began working for IMC on May 1, 1987. He did part-time work until 1990, when he moved into a full-time position in IMC's housekeeping department. IMC terminated Mr. Vital in December 1991, but reinstated him in January 1992 pursuant to a "last chance" agreement. IMC contends that despite the agreement, Mr. Vital failed to appear for work at his regularly scheduled time and consequently was terminated effective March 20, 1992. Mr. Vital maintains that his termination was instead due to discrimination based on his national origin.

Throughout his employment at IMC, Mr. Vital was a member of a collective bargaining unit represented by Local 1199. The terms of Mr. Vital's employment were governed by a Collective Bargaining Agreement ("CBA") entered into by Local 1199 and the League of Voluntary Hospitals and Homes of New York. The CBA prohibits discrimination on the basis of national origin. It also designates procedures for filing grievances and permits either IMC or Local 1199 to refer an unresolved grievance to binding arbitration.

In response to Mr. Vital's second termination, Mr. Vital and Local 1199 filed a grievance pursuant to the CBA. Through Local 1199's counsel, Mr. Vital subsequently filed a formal demand for arbitration of the grievance. However, no arbitration hearing was held. IMC maintains that instead, Mr. Vital and Local 1199 negotiated a settlement agreement with IMC, which Mr. Vital signed on February 25, 1993 ("Settlement Agreement"). Under the terms of the Settlement Agreement, Mr. Vital was to receive the gross sum of $641.22, less deductions, representing one and a half weeks' salary. The agreement further provides:

> Local 1199 and Coleman Vital withdraw the demand for arbitration with prejudice[, and] Coleman Vital's discharge will be converted to a resignation for personal reasons effective March 20, 1992, his letter of discharge will be expunged from the file, and [IMC]'s records will be adjusted to reflect the resignation.

IMC contends that it issued Mr. Vital a check in the appropriate amount on February 25, 1993, and that Mr. Vital endorsed and cashed the check. Mr. Vital claims that the signature on the Settlement Agreement is not his, denies receiving the check, and professes not to understand why his grievance never went to arbitration.

In April 1992, after Mr. Vital filed his grievance but before the Settlement Agreement was allegedly reached, Mr. Vital filed a charge of discrimination with the EEOC and the New York State Division of Human Rights. In his charge, Mr. Vital alleges that IMC discriminated against him based on his national origin, which he describes as "American," when it terminated him in March 1992. On December 8, 1995, the EEOC issued Mr. Vital a "right to sue" letter. Neither Mr. Vital's charge nor the right to sue letter mentions Local 1199.

On January 17, 1996, Mr. Vital filed the instant Title VII complaint *pro se*.[2] In his complaint, Mr. Vital alleges that he was discriminated against by coworkers and supervisors based on his national origin, which he designates "Black/Native American." According to Mr. Vital, ninety-five percent of IMC's housekeeping staff are from "third world" countries and were hired because of nepotism. Mr. Vital further alleges that his co-workers nicknamed him "Yankee boy" because he is an American from the South. In his complaint, Mr. Vital demands a jury trial.

After answering the complaint, IMC moved for summary judgment on the ground that Mr. Vital is barred from bringing this suit because he knowingly initiated an arbitration of his national origin discrimination claim against IMC and subsequently withdrew his claim with prejudice. At the same time, Local 1199 filed a motion to dismiss the complaint. By Memorandum–Decision and Order dated January 7, 1997, the District Court (John R. Bartels, *Judge* ) granted Local 1199's motion, but reserved judgment on IMC's motion for summary judgment. The District Court ordered an evidentiary hear-

---

**2.** Although Mr. Vital repeatedly requested the appointment of counsel, that application was denied.

ing before Magistrate Judge Steven M. Gold to determine whether Mr. Vital "signed a stipulation of settlement dismissing his claims with prejudice."

The Magistrate Judge subsequently conducted a hearing, at which various witnesses testified. After the hearing, the Magistrate Judge issued a Report and Recommendation, in which he "conclude[d] that the testimony of [IMC's witnesses was] credible, and that plaintiff's contentions are unworthy of belief" and therefore "recommend[ed] that the Court find that plaintiff signed the Stipulation of Settlement." The Magistrate Judge further concluded that "the stipulation resolves plaintiff's claim of wrongful termination" and recommended that judgment be entered in favor of IMC. On April 21, 1998, the District Court (Frederic Block, *Judge*) issued a Memorandum and Order adopting in its entirety the Magistrate Judge's recommendation. On May 7, 1998, judgment was entered dismissing Mr. Vital's action *in toto*.

On May 13, 1998, Mr. Vital filed a notice of appeal.

## DISCUSSION

### I. *Local 1199's Motion to Dismiss*

The District Court dismissed Mr. Vital's claim against Local 1199 because the union was not named in the charge that Mr. Vital filed with the EEOC or in the right to sue letter that the EEOC issued to Mr. Vital.

We review the district court's dismissal *de novo*, accepting the material allegations in the complaint as true. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (citations omitted). Dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Chance*, 143 F.3d at 701. "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance*, 143 F.3d at 701.

Despite this stringent standard, the District Court properly dismissed the claim against Local 1199. A complainant must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court under Title VII. *See* 42 U.S.C. § 2000e–5(f)(1) (limiting aggrieved party's right to sue to "the respondent named in the charge"). "[T]he charge serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). "Because these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements," we recognized an "identity of interest" exception to this rule in *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991). That exception "permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.* Following the Third Circuit's lead, we consider four factors in determining whether an identity of interest exists:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)); *see also Eggleston*, 657 F.2d at 905 ("[W]here an unnamed party has been provided with adequate notice of the charge, under circum-

stances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party."). In *Johnson*, we determined that dismissal was appropriate because these factors indicated no identity of interest and the unnamed party had not received notice of the charge against it. *See* 931 F.2d at 210–11.

■ Given our decision in *Johnson*, it was appropriate for the District Court to dismiss Mr. Vital's Title VII claim against Local 1199. Mr. Vital does not contest the fact that he failed to file an administrative complaint against Local 1199. Although the District Court did not explicitly consider the four factors identified in *Johnson*, it is clear from the record that (1) Mr. Vital was fully aware of Local 1199's role at the time he filed the EEOC charge, (2) the interests of Local 1199 and IMC are sufficiently dissimilar that Local 1199's participation would be necessary to voluntary conciliation, and (3) there is no allegation that Local 1199 ever represented to Mr. Vital that his relationship with Local 1199 should be through IMC. Accordingly, there is no identity of interest between IMC and Local 1199.[3] Further, as in *Johnson*, there is no indication that the unnamed party had notice of any charge against it. Mr. Vital thus has no Title VII claim against Local 1199.

The District Court also properly considered whether Mr. Vital's claim against Local 1199 could be liberally construed as a duty of fair representation claim pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (requiring liberal construction of claims raised *pro se* ). However, even if such a claim were colorable, it would be barred by the six-month statute of limitations that applies to such actions, *see West v. Conrail*, 481 U.S. 35, 37–38, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), as none of the events alleged in Mr. Vital's pleadings occurred within the six months preceding the date on

which he filed his complaint. Accordingly, we affirm the District Court's dismissal of Mr. Vital's claim against Local 1199.

## II. *IMC's Motion for Summary Judgment*

The District Court dismissed Mr. Vital's claim against IMC on summary judgment after concluding that Mr. Vital had waived his Title VII claims by signing a settlement agreement. We review the District Court's grant of summary judgment *de novo*. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149 (2d Cir.1998). "Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (per curiam). In assessing whether summary judgment was appropriate, "we resolve all ambiguities and draw all reasonable inferences against the moving party." *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997). We conclude that the District Court erred in granting summary judgment for two reasons: first, because it is not clear from the record that Mr. Vital had been informed or otherwise understood the nature and consequences of a motion for summary judgment and, second, because the District Court inappropriately resolved an issue of fact on that motion.

■ We have previously acknowledged that it is not "obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982)). As a result, "[t]he failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal." *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994) (per curiam). In accordance with this rule, we reversed a judgment entered against *pro se* litigants who received no notice of the

---

**3.** On this record, it is not clear if Local 1199 suffered actual prejudice from not being named in the EEOC charge. However, given the strength of the other three factors, we are satisfied that there is no identity of interest between Local 1199 and IMC.

nature of summary judgment and completely failed to respond to an opposing motion for summary judgment in *Ruotolo v. IRS. See* 28 F.3d at 8–9; *see also Grabois v. Jones,* 89 F.3d 97, 99 n. 3 (2d Cir.1996); *accord Timms v. Frank,* 953 F.2d 281, 285 (7th Cir.) (requiring notice to *pro se* litigants that "include[s] both the text of Rule 56(e) and a short and plain statement in ordinary English that any factual assertion in the movant's affidavits will be taken as true by the district court unless the non-movant contradicts the movant with counter-affidavits or other documentary evidence"), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992). At the same time, we have recognized that a District Court need not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice, *see Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (per curiam), or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment, *see M.B. # 11072–054 v. Reish,* 119 F.3d 230, 232 (2d Cir.1997) (per curiam).

█ Although we have never reversed on these grounds a judgment entered against a *pro se* litigant who responded to an opposing motion for summary judgment, the concerns that we have expressed regarding *pro se* litigants' understanding of summary judgment are not extinguished by the mere fact that a *pro se* litigant files a response of some sort. Where the proper notice has not been given, the mere fact that the *pro se* litigant has made some response to the motion for summary judgment is not dispositive where neither his response nor other parts of the record reveal that he understood the nature of the summary judgment process. *Cf. M.B. # 11072–054,* 119 F.3d at 232 (noting that our prior cases "do not ... mandate reversal ... where appellant did in fact respond to the opposing motion for summary judgment *and* where the record is clear that he understood the need to set forth all available evidence demonstrating a genuine dispute over material facts") (emphasis added). In the absence of explicit notice from the District Court or an opposing party, the nature of the papers submitted by the litigant and the assertions made therein as well as the litigant's participation in proceedings before the District Court may assist in determining whether the *pro se* litigant had such an understanding. *See id.*

█ In the record before us, there is no indication that the District Court provided any notice of the nature and consequences of a summary judgment motion. Nor did IMC's motion papers provide Mr. Vital the requisite warning or explanation. Finally, we are unable to infer awareness from Mr. Vital's own submissions and participation. Mr. Vital submitted a one-paragraph response to IMC's motion captioned "Plaintiff-memorandum of law in support of its motion not to dismiss the complaints" and attached a copy of one of IMC's exhibits. Mr. Vital did not submit a statement of disputed facts, as required by E.D.N.Y. Local Rule 56.1(b). While Mr. Vital subsequently had the opportunity to present evidence, including witnesses, before the Magistrate Judge, the hearing dealt exclusively with a narrowly circumscribed issue: whether Mr. Vital had in fact signed the Settlement Agreement. On this record, we cannot determine whether Mr. Vital knew that he was required to present counter-affidavits or other documentary evidence as to *every* genuine issue of material fact that he wished to preserve for trial. We therefore conclude that the District Court erred by granting IMC summary judgment.

█ Even if Vital had received adequate notice, the District Court's judgment would not stand. Before granting summary judgment, the District Court referred the case to a Magistrate Judge to "have one issue of fact resolved: whether Mr. Vital signed a stipulation of settlement dismissing his claim with prejudice." This was error: While a District Court may take oral testimony on a summary judgment motion pursuant to Rule 43(e) of the Federal Rules of Civil Procedure, *see Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42 n. 2 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987), the purpose of doing so is not to assess the credibility of witnesses or resolve issues of fact, but merely to deter-

mine whether there are issues to be tried, *see Vona v. County of Niagara*, 119 F.3d 201, 205 n. 4 (2d Cir.1997) (noting that it would be improper on a motion for summary judgment to "turn[ a] Rule 43(e) hearing into a bench trial" by making findings of disputed facts). As we have previously observed:

The function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment.

*Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) (citations omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061, 1063–64 (2d Cir.1995); *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994).

■ We also note that IMC cannot prevail in this action simply by showing that Mr. Vital signed the Settlement Agreement; rather, IMC must establish that the agreement constituted a knowing and voluntary release of Mr. Vital's right to bring a Title VII action. *See Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir.1998) (applying "a 'totality of the circumstances' test to determine whether a release of Title VII claims is knowing and voluntary"); *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir.) (same), *cert. denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). It is, of course, possible that by signing the agreement, Mr. Vital merely released any contractual anti-discrimination claim he might have pursuant to the CBA, without affecting his right to pursue a Title VII claim before the EEOC and in federal court.

We express no opinion as to the ultimate outcome of Mr. Vital's suit, which remains to be resolved in the District Court.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is hereby affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Each party shall bear its own costs.