Elizabeth MARCZESKI, Plaintiff,

v.

Diana LAW, and Gena Butler a/k/a Isurendr, Defendants.

No. 398CV1427 (GLG).

United States District Court,
D. Connecticut.

Nov. 20, 2000.

316

Elizabeth Marczeski, New London, CT, pro se.

Kevin D. O'Leary, Cummings & Lockwood, Hartford, CT, for Timothy Price.

Diana Law, Colorado Springs, CO, pro se.

Steven R. Lau, Dillon & Sarcone, White Plains, NY, for Diana Law.

Gena Butler, CO, pro se.

## RULING ON DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

GOETTEL, District Judge.

This case arises out of a prolonged dispute among three women who, using various nicknames ("nicks"), frequented lesbian "chat rooms" [1] on the Internet.

---

1. A "chat room" is a discussion forum on the Internet that allows the participants to engage in "real-time" dialogue by typing messages to one another that appear almost immediately on the others' computer screens. *Reno v. American Civil Liberties Union*, 521 U.S. 844,

Defendants are residents of Colorado. Plaintiff is a resident of Connecticut. It is not clear from the papers whether plaintiff and defendants have ever met in person. However, over the course of several years of "cyberchatting" on the Internet, they developed a relationship that ultimately led to this lawsuit and several others. Plaintiff alleges that she was defamed, harassed and defrauded of money and property by these defendants, and claims, *inter alia,* that her reputation on the Internet has been ruined forever by the scandalous messages disseminated by them. Defendants have pressed criminal charges against plaintiff for harassment in the second degree and, although, no counterclaim has been asserted, they claim that plaintiff has ruined them professionally because of the allegations in this suit and her complaints to their employers. Most recently, another federal suit has been filed in this district by plaintiff against these defendants, as well as dozens of others, arising out of her arrest, conviction, and subsequent involuntary commitment in a mental hospital.

This Court has serious reservations about whether this dispute should have ever wound its way into court (much less federal court). Nonetheless, by virtue of the federal diversity statute, 28 U.S.C. § 1332(a), this matter is properly before the Court, and we are bound to address the merits of plaintiff's claims, giving plaintiff the deference that is due all *pro se* litigants.

Defendants have now moved this Court to dismiss plaintiff's action against them on the grounds that (1) plaintiff has failed to state a claim upon which relief may be granted, Rule 12(b)(6), Fed.R.Civ.P.; (2) this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a) because plaintiff cannot satisfy the $75,000 amount in controversy requirement, Rule 12(b)(1), Fed. R.Civ.P.; and (3) there exist no genuine issues to be tried, Rule 56, Fed.R.Civ.P. [**Doc. No. 76**]. In support of their motion, defendants have filed a Local Rule 9(c)1 Statement [**Doc. No. 78**], and a memorandum of law with exhibits, including portions of plaintiff's deposition. [**Doc. No. 77**]. Plaintiff responded to this motion with a memorandum and a compilation of exhibits [**Doc. No. 80**], and an objection to the motion that also includes exhibits. [**Doc. No. 81**] . She also filed a motion to strike addressed to certain of defendants' exhibits and a portion of their brief [**Doc. No. 82**], which the Court has denied in part and granted in part. [**Doc. No. 90**]. Defendants then filed a reply brief [**Doc. No. 84**], to which plaintiff filed a surreply. [**Doc. No. 87**]. Defendants have responded to this surreply, asking this Court to issue an order prohibiting plaintiff from filing any further papers and declaring the motion fully submitted. [**Doc. No. 88**]. However, before the Court had an opportunity to rule on this request, plaintiff filed yet another reply to defendants' "continued responses" [**Doc. No. 89**] and most recently an untitled document addressed "Dear Clerk." [**Doc. No. 91**].

Although many of these filings are procedurally inappropriate,[2] in light of the plaintiff's *pro se* status, the Court has duly considered all of the filings, including all of the exhibits proffered by plaintiff. The Court has also carefully reviewed plaintiff's filings to determine whether, in responding to these motions, she understood the significance of defendants' motion to

851–52, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The chat rooms can be private, where the participants are limited to designated individuals, or open to the public.

**2.** The Local Rules allow the opposing party to file a memorandum in opposition to the initial motion, to which the moving party may (but is not required to) file a reply. Local Rule 9.

Any further memoranda, such as a surreply, may be filed only with leave of court, which was not obtained in this case. Were the plaintiff not *pro se*, the Court would have stricken all filings after the reply brief. However, as discussed below, given the latitude that must be afforded *pro se* litigants, the Court has allowed these filings.

dismiss and for summary judgment. The Court has concluded that plaintiff does fully appreciate the significance of these motions. She has responded repeatedly to each of defendants' arguments with legal arguments concerning what she herself characterizes as the "viable issues for trial" and has presented evidence in support of her claims.[3]

Accordingly, after due consideration of all of the papers that have been presented and all of the evidence in the record, the Court DENIES defendants' motion to dismiss under Rule 12(b)(6) as untimely, DENIES defendants' motion to dismiss for lack of subject matter jurisdiction, and GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment.

## BACKGROUND

Although the material facts of this lawsuit will be discussed in more detail below, the following is a somewhat sanitized redaction of plaintiff's *pro se* complaint.

In approximately 1995 or 1996, plaintiff met defendant Law on the Internet. Plaintiff alleges that she and defendant Law and a number of other women (some of whom were involved in various relationships with one another) "hung out" in a chat room on the Internet known as "f2fdungeon" (female to female dungeon). Plaintiff's complaint discusses in detail the relationships between these women, most of which are totally irrelevant to this lawsuit since most of these women are not parties to this case. It appears from plaintiff's complaint that participants in these chat rooms not only "chatted" with one another but also assumed different roles vis-a-vis one another. For example, plaintiff alleges that at the recommendation of one "Stormy1," she began playing the role of the "submissive in training" for another woman known as "SueB312." Exactly what that involved is not evident from plaintiff's complaint, but it is clear that all of this took place on the Internet. Plaintiff states that in this role she would e-mail[4] SueB312 daily. However, she claims that when she asked for a "release," SueB312 became angry and belligerent and started a "rumor" (presumably on the Internet) that plaintiff, through an e-mail, had threatened to kidnap, cut-up, and mutilate SueB312's children. Plaintiff states that she never wrote such an e-mail and was overwrought by this suggestion.

In May, 1996, plaintiff states that defendant Law invited plaintiff, SueB312, and others into a chat room known as "# legal-talk," which defendant Law had created for the purpose of discussing this alleged e-mail from plaintiff to SueB312. Plaintiff alleges that defendant Law publicly libeled her by inviting the public into this chat room to discuss this "damning e-mail." She further claims that her reputation on the Internet was ruined by virtue of the accusation that she sent this e-mail and that a number of women, including defendant Law, called her Internet provider and threatened to sue him unless she was disconnected.

Following this incident, plaintiff states that she found a new provider and a new "nick," yet defendant Law was able to track her down on the Internet.

In approximately August, 1997, plaintiff alleges that defendant Law solicited her online to be a silent partner in a restau-

---

**3.** In fact, in a separate "motion," plaintiff has waived her demand for a jury trial if her objections to the motion to dismiss and for summary judgment are sustained, stating that she believes it would be in the interests of justice to waive a jury trial and to have this Court decide the merits of her civil action. **[Doc. No. 83].** Defendants have indicated that they do not oppose this "motion" to waive a jury trial. **[Doc. No. 86].**

**4.** "E-mail" is short-hand for "electronic mail," which allows an individual to send a message via the Internet to another individual or group of addresses. It is akin to a note or letter. *Reno v. American Civil Liberties Union,* 521 U.S. at 851, 117 S.Ct. 2329.

rant and catering business for gays and lesbians that Law wanted to start. Defendant Law needed $100,000 to buy property and build a restaurant. Plaintiff does not claim to have sent any money or property in response to this request, and it does not appear that this restaurant business ever got off the ground.

About this time defendant Butler entered the picture as the "live-in lover" of defendant Law and began "chatting" with plaintiff online.

From August to December, 1997, plaintiff claims that defendant Law continually solicited money from her. After the restaurant business, Law's next proposed venture was a publishing business for which she needed $10,000. Plaintiff states that she sent her a $1,000 voice-digital camera and a scanner. Plaintiff also sent her $475.00 for the publishing business, as well as another $500.00 for defendant Butler to purchase snow tires for her car. Plaintiff concedes that the $500 was a gift.

From September, 1997 to June 24, 1998, plaintiff claims that defendants Law and Butler continued to harass her, threaten her, stalk her on the Internet and by telephone, and solicited others to libel and harass her. During this time, defendants also accuse plaintiff of harassing them on the telephone and over the Internet.

In September and December, 1997, plaintiff states that she wrote Law a letter expressing her love for her and indicating that she could not continue to call her until her feelings returned to a friendship only basis. Plaintiff alleges that defendant Law called her numerous times but she refused to answer the telephone.

Plaintiff claims that defendant Butler, out of jealousy over plaintiff's relationship with defendant Law, harassed plaintiff by sending her e-mail messages accusing her of being mentally ill, telling her how ugly she was, and threatening to contact the FBI about her. She also claims that defendant Butler repeatedly e-mailed her, "YOU ARE WANTED BY THE IRS, IRS, IRS, IRS, IRS, IRS, ..." Despite changing her Internet nicknames on several occasions, plaintiff states that defendants were still able to track her down on the Internet.

As further harassment and defamation, she alleges that they published in a topic window in a chat room "Amtrack derails" and "Amtrack is wanted by the IRS." One of plaintiff's "nicks" was "Amtrak," and plaintiff claims that the public was able to view this defaming topic window.

She further claims that defendants asked her Internet provider to disconnect her based upon their false accusations that she had threatened them with bodily harm. She alleges that defendant Law solicited others online to harass her and stalk her on the Internet and to publicly libel her to get plaintiff off the Internet and to destroy her reputation. She also claims that defendants fabricated her e-mail, manipulated her e-mail, and edited it.

In February, 1998, the animosity and harassment between the parties escalated to the point that defendants called the Colorado Springs police and then the New London Connecticut police about plaintiff. Plaintiff alleges that defendants also solicited others to call the police to confirm their accounts of the harassment. Plaintiff was arrested and, after entering a plea of *nolo contendere,* was convicted of harassment in the second degree. (Plaintiff's claims relating to her arrest and conviction are part of another suit filed in this District).

On July 15, 1998, plaintiff filed this lawsuit against defendants Law and Butler, as well as two corporate officers of MCI, defendant Law's employer. (Plaintiff claimed that defendant Law accessed the Internet during business hours while at work at MCI, using an MCI-owned computer, MCI telephone lines, and an MCI Internet access account. This Court dismissed the MCI defendants for lack of personal jurisdiction.) In her complaint, plaintiff alleges that defendant Law solic-

ited, harassed and stalked her on the Internet and telephone; that she solicited others to harass and stalk her; that she threatened plaintiff with bodily harm over the Internet and on the telephone; that she publicly libeled and slandered plaintiff on the Internet; that she defrauded plaintiff by taking money for an investment that may or may not exist; that she filed false allegations, including fabricated e-mail, with the police. Plaintiff further alleges that defendant Butler publicly libeled and slandered her and harassed her via the Internet. She claims as damages $10,000,000.

## DISCUSSION

### I. Defendants' Motion to Dismiss under Rule 12(b)(6)

Defendants ask this Court to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P. A motion raising this defense "shall be made before pleading...." Rule 12(b), Fed. R.Civ.P. Defendants have answered plaintiff's complaint and, in fact, have previously filed a motion to dismiss. Their Rule 12(b)(6) motion is untimely and will be denied.[5] However, as discussed below, defendants' challenge to the legal sufficiency of plaintiff's claims will be considered in connection with their motion for summary judgment.

### II. Defendants' Motion to Dismiss Under Rule 12(b)(1)

■ Defendants also ask this Court to dismiss plaintiff's complaint under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction because plaintiff cannot satisfy the $75,000 amount in controversy requirement of the federal diversity statute, 28 U.S.C. § 1332(a). Unlike a Rule 12(b)(6) motion, a motion to dismiss for lack of subject matter jurisdiction may be

made at any time, and the Court need not confine its evaluation to the face of the pleadings. *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 882 (2d Cir.1995); *see also 2 Moore's Federal Practice* § 12.30[1], [3] (3d ed.2000).

Defendants claim that, despite plaintiff's demand for "10 million" dollars in her complaint, she cannot reasonably allege damages in excess of $75,000, the minimum required amount for diversity jurisdiction under 28 U.S.C. § 1332(a). Defendants calculate that plaintiff damages total only several thousand dollars, which represents the amount of money and the cost of the items that plaintiff claims to have sent to defendants, which items were allegedly not returned.

Plaintiff responds that she is seeking "10 million for all Compensatory damages, Punitive damages, Negligent damages, Intentional negligent damages, and Intentional Punitive damages," which include "financial losses" for "medical expenses, postage, ink, paper, travel expenses," and presumably the cost of the items she claims to have sent to defendants; her pain and suffering caused by defendants' libel and fraud; damages for her resulting depression and problems with eating and sleeping; plus punitive damages. She also claims to have "suffered great damages" as a result of defendants' alleged public libel of her, which she claims ruined her life, her reputation, her character, and her friendships.

Plaintiff's complaint, on its face, satisfies the amount in controversy requirement. She has pled damages of $10,000,000. Under the test established by the Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938), "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdic-

---

**5.** Even if it were timely, the Court would be required to convert it to a Rule 56 motion for summary judgment because of defendants' reliance on matters outside the pleadings. Rule 12(b), Fed.R.Civ.P.

tional amount to justify dismissal." The Second Circuit has stated that there is a "rebuttable presumption" that the face of the complaint is a good faith representation of the actual amount in controversy. *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994). Nevertheless, the Court may dismiss the complaint if it appears to a "legal certainty" that plaintiff's claims are really for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In so doing, the Court is required to look at plaintiff's claims as of the date that the complaint was filed and aggregate all of her claims, since the diversity statute confers jurisdiction over "civil actions" rather than specific claims alleged in a complaint. *Wolde–Meskel v. Vocational Instruction Project*, 166 F.3d 59, 62 (2d Cir.1999). Additionally, the Court should include plaintiff's punitive damage claims to the extent that punitive damages may be recovered under governing state law. *Bell v. Preferred Life Assur. Soc.*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Schreiber v. Blankfort*, 76 F.R.D. 474, 476 (D.Conn. 1977).

The Court has no difficulty in concluding that plaintiff's demand for $10,000,000 was not made in good faith. No reasonable jury could award plaintiff damages of this magnitude based on the facts alleged by plaintiff. More troubling, however, is the question of whether the Court can conclude with "legal certainty" that plaintiff's claims, in the aggregate, do not exceed $75,000. Plaintiff has asserted claims for libel, slander, fraud, harassment, and filing false statements with the police leading to plaintiff's arrest. She has sought recovery of certain monies and property provided to

defendants, as well as damages for physical and emotional injuries and damage to her reputation. She also seeks punitive damages.[6] Although her special damages (on which defendants focus almost exclusively) clearly do not approach the $75,000 mark, her other compensatory damages are far more difficult to quantify with any degree of certainty.

Although we have grave reservations as to whether this case should be in court, much less in federal court, nevertheless, given the breadth of plaintiff's claims for damages, we cannot conclude with "legal certainty" that plaintiff has not met the amount in controversy requirement in order to invoke this Court's diversity jurisdiction. Therefore, we deny defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

### III. Defendants' Motion for Summary Judgment

Initially, defendants ask this Court to deem admitted all material facts set forth in their Local Rule 9(c)1 Statement because plaintiff has failed to file a Local Rule 9(c)2 Statement admitting or denying defendants' statements and setting forth each issue of material fact as to which she contends there is a genuine issue to be tried. *See* Local Rule 9(c).

The Local Civil Rules of this District require a movant for summary judgment to include a "Local Rule 9(c)1 Statement" setting forth in separately numbered paragraphs "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." Defendants claim that plaintiff has failed to comply with the Local Rules because she has not filed a Local Rule 9(c)2

---

6. With respect to her punitive damage claim, punitive damages may be recovered under Connecticut tort law where the defendant acted with reckless indifference to the rights of the plaintiff or intentionally and wantonly violated those rights. *Venturi v. Savitt, Inc.*, 191 Conn. 588, 592, 468 A.2d 933 (1983). In Connecticut, punitive damage awards are limited to the plaintiff's litigation expenses less

taxable costs. *See, e.g., Champagne v. Raybestos–Manhattan, Inc.*, 212 Conn. 509, 559, 562 A.2d 1100 (1989); *Alaimo v. Royer*, 188 Conn. 36, 42, 448 A.2d 207 (1982). A *pro se* plaintiff cannot recover attorney's fees for his or her own litigation efforts. *Lev v. Lev*, 10 Conn. App. 570, 575, 524 A.2d 674 (1987). Therefore, any punitive damages that plaintiff could recover will be severely limited.

Statement controverting the statements set forth by defendants and, therefore, their motion for summary judgment should be granted.

The requirements of Local Rule 9(c) must be tempered by the deference that we are required to give *pro se* litigants. The Second Circuit has cautioned that a motion for summary judgment cannot be granted against a *pro se* litigant unless the record reflects that she was told or otherwise understood the requirements and consequences of a Rule 56 motion for summary judgment. *Vital v. Interfaith Medical Center,* 168 F.3d 615, 620–21 (2d Cir. 1999). This includes the fact that all assertions of material fact in the movant's affidavits will be taken as true unless the pro se litigant contradicts those factual assertions in one or more affidavits made on personal knowledge or by submitting other materials as provided in Rule 56(e). *McPherson v. Coombe,* 174 F.3d 276, 280, 282 (2d Cir.1999). In *Vital,* the Second Circuit reversed the district court's granting summary judgment against a *pro se* plaintiff who had not submitted a statement of disputed facts as required by the local rules, stating that it was not clear that the plaintiff knew that he was required to present counter-affidavits or other documentary evidence as to *every* genuine issue of material fact that he wished to preserve for trial. 168 F.3d at 621 (original emphasis). There is nothing in the record in this case to indicate that plaintiff was advised that she was required to file a Local Rule 9(c)2 Statement and the consequences of her failing to file such a Statement.

Additionally, in this case, plaintiff's failure to file a Local Rule 9(c)2 Statement is inconsequential. First, defendants' Local Rule 9(c)1 Statement [**Doc. No. 78**] does not comply with the requirements of the Local Rules in that they have set forth legal contentions rather than material facts as to which they contend there is no genuine issue for trial. *See* Local Rule 9(c)1. Second, plaintiff has repeatedly addressed each of defendants' contentions in her various filings, often with statements such as "This is a lie!" The Court has been more than adequately apprised of plaintiff's position as to each of defendants' contentions.

Therefore, in light of the Second Circuit's holdings in *Vital* and *McPherson,* and based upon the filings that the Court has received from plaintiff, this Court must deny defendants' motion for summary judgment on the ground that plaintiff failed to file a Local Rule 9(c)2 Statement.

We now turn to the substance of defendants' summary judgment motion, in which defendants argue that there are no genuine issues of material fact as to any of plaintiff's claims and, therefore, defendants are entitled to judgment as a matter of law.

The general principles applicable to summary judgment motions are well-settled. Under Rule 56(c), Fed.R.Civ.P., summary judgment shall be rendered forthwith "if the pleadings, depositions, [and] answers to interrogatories ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The burden of showing that there is no genuine factual dispute rests upon the moving party. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In assessing the record to determine if such issues exist, we are required to resolve all ambiguities in favor of the party against whom summary judgment is sought and to draw all permissible inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This remedy, which precludes a trial, is properly granted only when no rational jury could find in favor of the non-moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). Moreover, we

must read the pleadings of a *pro se* plaintiff liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

Although plaintiff's complaint sets forth all of her claims in a single count, she characterizes her claims as libel, fraud, harassment, stalking, threatening, and manipulation of plaintiff for money and property. (Pl.'s Mem. dated 10/13/00 at 8). Defendants, on the other hand, have attempted to dissect plaintiff's complaint into seven separate causes of action, which they characterize as solicitation via the Internet, harassment via the telephone and Internet, stalking via the Internet, threatening bodily harm via the Internet and telephone, public libel and slander via the Internet, defrauding plaintiff of money, and filing false allegations with the police. Defendants then argue as to each claim that Connecticut common-law does not recognize that particular cause of action or that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law.

Plaintiff's *pro se* complaint cannot be carved into seven discrete pieces, as defendants would have us do. Instead, we must consider the complaint in its entirety to discern whether the allegations, when liberally construed in the light most favorable to plaintiff, state a cause of action under Connecticut law, regardless of the labels placed on these claims by plaintiff. *See Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993), *cert. denied,* 513 U.S. 1014,

115 S.Ct. 572, 130 L.Ed.2d 489 (1994) (holding that the focus of the Court must be on whether plaintiff's complaint states any valid ground for relief). Applying these principles, we now consider each of defendants' asserted grounds for summary judgment.

### A. Solicitation Via the Internet

Defendants assert that plaintiff has failed to state a legally cognizable claim for civil solicitation in that any money delivered by plaintiff to defendants was done as an *inter vivos* gift.

Plaintiff claims that defendant Law[7] asked her for $100,000 to start a restaurant for gays and lesbians and for $10,000 to start a publishing business. Plaintiff was to be a "silent partner" in these business ventures. In response to these requests for money, plaintiff states that she sent defendant Law approximately $500,[8] as well as a scanner and a voice digital camera for the publishing business.[9] Plaintiff claims that defendant Law defrauded her of this money and equipment based upon her fraudulent misrepresentations concerning these business ventures that she never intended to start and never did start. *See, e.g.,* Pl.'s Obj. to Defs.' Mot. to Dismiss at ¶ 7.

Defendant Law denies making any misrepresentations, stating that any conversations about these businesses to plaintiff were just about her "dreams" of starting a business. Defendant claims that any money or items sent by plaintiff were a gift

7. When deposed, plaintiff clarified that these particular claims are only against defendant Law. (Pl.'s Dep. at 33).

8. Plaintiff has produced copies of two money orders sent to defendants. (Pl.'s Dep. at 36). One of these she now concedes was a birthday gift, but the other she claims was sent as a result of defendant's fraudulent solicitation of money from her.

9. Plaintiff also claims to have sent defendants approximately $700 worth of equipment of a sexual nature, but concedes that this was a gift. (Pl.'s Dep. at 53). She also states that

she gave defendant Law a TENS unit. (TENS stands for transcutaneous electric nerve stimulation. It involves the application of skin electrodes to nerve endings in order to block the transmission of pain signals to the brain. *Heritage Family Library Medical Encyclopedia* at 878 (Southwestern Company 1998)). Plaintiff states that this was not a gift and defendant Law has not returned the TENS unit. This might give rise to a claim for replevin, but it is not part of plaintiff's fraud claim since plaintiff does not allege any misrepresentation by defendant Law that induced her to give this TENS unit to Law.

and further denies receipt of some of these items and claims that others were returned. Plaintiff denies that any of these items were returned.

■ Although defendant characterizes plaintiff's claim as one for "solicitation," it appears that plaintiff is attempting to plead a claim for fraud. To state a cause of action for fraud, she must establish that (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the person making it; (3) it was made to induce the other person to act upon it; and (4) the latter did so act on it to his injury. *Miller v. Appleby*, 183 Conn. 51, 438 A.2d 811 (1981).

■ Given the leeway that is due *pro se* litigants, the Court finds that plaintiff has sufficiently pled the elements of a claim for fraud. The Court further finds genuine issues of material fact concerning whether defendant Law made any false statements to plaintiff to obtain money and equipment for the business ventures; what money and items were actually sent by plaintiff; what items, if any, were returned; and whether any of the items sent by plaintiff were gifts. Therefore, the Court denies defendants' summary judgment motion as to plaintiff's claim for fraud.

### B. Harassment over the Internet and Telephone

Defendants next argue that plaintiff has failed to state a legally cognizable claim for civil harassment in that she has not suffered any damages and that any claim she has for harassment is criminal in nature and should be filed with the State Attorney General's Office.

■ Plaintiff has alleged that defendants harassed her over the telephone and Internet and solicited others to do likewise. She has provided printed copies of Internet communications between plaintiff and defendant Butler in which Butler states that IRS agents had been called about plaintiff and that they were looking for her. *See* Pl.'s Obj. to Defs.' Mot. to Dismiss, Exh. A–10 at 11–15. Butler further accuses plaintiff of fraud. In printed copies of these Internet communications, these accusations are repeated over and over again. *Id.* Plaintiff also claims that defendants reported her to the FBI, although she offers no proof in support of that claim. She further alleges that defendants repeatedly called her employer, telling him that she was receiving money under the table. She also asserts that defendants called her Internet providers to have her disconnected because she was an "on-line killer" and that they solicited others to do likewise. She claims to have received many harassing telephone calls from defendants. Defendants have denied that they harassed plaintiff in any manner whatsoever and argue instead that it was plaintiff who was harassing them. There are factual issues in this regard.

■ Contrary to defendants' assertion that plaintiff's only avenue of relief is to file a criminal charge against defendants, plaintiff may bring a civil action for harassment. *See Clark v. Damiani*, 12 Conn.App. 805, 531 A.2d 1202 (1987). Moreover, plaintiff has alleged damages resulting from the claimed harassment. She states that she suffered depression, problems with sleeping and eating, pain and suffering and certain financial losses including medical expenses. Thus, summary judgment must be denied on the grounds asserted by defendants.

### C. Stalking via the Internet

■ Defendants next argue that plaintiff has failed to state a legally cognizable claim for stalking via the Internet. They argue again that plaintiff's only avenue of recourse is to file a criminal charge against defendants.

We do not read plaintiff's complaint as attempting to set forth a separate claim for stalking, as that term is defined by

Connecticut's Penal Code.[10] She does not allege that defendants followed her or lay in wait for her so as to cause her to fear for her physical safety. Instead, in using the term "stalking," plaintiff is referring to defendants' alleged harassment of her by tracking her down on through various Internet Service Providers, despite the fact that she repeatedly changed the nicknames that she was using on the Internet. This is part of her harassment claim. Therefore, to the extent plaintiff is attempting to assert a separate claim against defendants for "stalking" her on the Internet, that claim is dismissed. Otherwise, we will treat what plaintiff describes as "stalking via the Internet" as part of her harassment claim.

### D. Assault

■ Defendants assert that plaintiff has failed to allege the elements of assault. Plaintiff does not allege that she was assaulted by either defendant.[11] An assault requires an overt act evidencing an attempt to do bodily harm, which falls short of an actual battery. *See DeWitt v. John Hancock Mut. Life Insur. Co.*, 5 Conn. App. 590, 594, 501 A.2d · 768 (1985). A threat by telephone or on the Internet is not a civil assault. Douglass B. Wright, John R. FitzGerald & William L. Ankerman, *Connecticut Law of Torts* § 8 (3d ed.1991). Therefore, although we do not read plaintiff's complaint as asserting an assault claim, to the extent that such a claim is asserted, it is dismissed.

**10.** Connecticut's Penal Code defines stalking in the second degree as when a person, with intent to cause another person to fear for his physical safety, willfully and repeatedly follows or lies in wait for such person and causes such other person to reasonably fear for his physical safety. Conn.Gen.Stat. § 53a–181d.

**11.** Plaintiff does assert that while she was involuntarily hospitalized allegedly as a result of actions of defendants, she was sexually groped by a male patient, sexually harassed and assaulted, spit on by HIV infected patients, and subjected to cruel, unusual, and inhuman punishment. These are not claims

### E. Defamation

■ Defendants argue that plaintiff has failed to allege the elements of defamation (libel or slander) in that the undisputed evidence establishes that defendants made no defamatory statements concerning plaintiff. Defendants also assert that there is no clear identification of parties because defendants used plaintiff's screen name, which at times was used incorrectly ("AMTRACK" instead of "AMTRAK"). Further, defendants claim that plaintiff did not suffer any damages as a result of the alleged defamation. We consider these arguments in the reverse order.

■ With respect to defendants' argument that plaintiff did not suffer any damages as a result of the alleged defamation, as discussed above, plaintiff has claimed general damages for physical injuries and emotional distress. Special damages are not a required element of a cause of action for libel *per se*, which includes publications accusing plaintiff of criminal conduct. This would include the alleged defamation accusing plaintiff of threatening by e-mail to cut up, mutilate and torture someone's children (discussed below). *See Battista v. United Illuminating Co.*, 10 Conn.App. 486, 491, 523 A.2d 1356, *cert. denied*, 204 Conn. 802–03, 525 A.2d 1352 (1987); *Connecticut Law of Torts* §§ 146, 147. It would not, however, include the alleged defamatory statement, "Amtrack derails,"[12] which would require proof of spe-

for an assault by these defendants and it does not appear that plaintiff is claiming otherwise.

**12.** Plaintiff claims that defendants defamed her when they displayed in a "topic window" in two chat channels known as "f2fdungeon" and "Bifemdomme," the phrase "Amtrack derails," referring to plaintiff whose "nick" at the time was "Amtrak." As discussed below, there is no evidence that anyone viewing this message understood it to refer to plaintiff. Further, there is no evidence that anyone who viewed this understood what defendants intended by the term "derails." *See Restatement (Second) Torts* § 563, cmt. b ("[A]l-

cial damages such as a pecuniary loss caused by the defamation. With respect to this statement, plaintiff would have to prove more than injury to her reputation, or that she had been subjected to public ridicule, or that her association with friends had been adversely affected. *Id.* She must show a pecuniary loss or other special damage caused by the defamatory statements. This she has not done and, therefore, this defamation claim will be dismissed.

■ As to defendants' argument that there was no clear identification of plaintiff by the alleged defamation, at a minimum there are genuine issues of material fact as to the alleged defamation that took place in the chat room "# legaltalk." Plaintiff used a number of nicknames on the Internet. From the content of the Internet messages provided to the Court by plaintiff, it would appear that the parties knew with whom and about whom they were "chatting." Based on the record before us, we cannot infer that no one would have known to whom this referred. Therefore, we decline summary judgment on that basis.

This is not necessarily true with respect to plaintiff's defamation claims concerning the topic headings published by defendants that "Amtrack Derailed" or that "Amtrack is wanted by the IRS." To the extent that

members of the public could view these topic headings on the Internet, there is no evidence that anyone understood that "Amtrack" referred to plaintiff, one of whose many "nicks" was "Amtrak." *See Restatement (Second) Torts* § 564, cmt. a ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff."). Plaintiff bears the burden of proving that these defamatory statements were published to someone who understood them to refer to her. This she has not done. Instead, she has speculated that thousands of people could have seen these topic headings and somehow understood that they referred to her, yet has failed to produce a single statement from anyone attesting to that fact. We find any possible connection between plaintiff and this alleged defamation too tenuous to support a viable claim for libel.

■ We now turn to the final issue raised by defendants as to whether there is any evidence in the record that defendants actually libeled plaintiff. Plaintiff has alleged that in May, 1996, defendant Law created a chat room called "# legaltalk" [13] in which plaintiff and a number of other women participated. According to plaintiff, the "public" was invited to participate.[14] Plaintiff asserts that defendants

though the person making the communication intends it to convey a defamatory meaning, there is no defamation if the recipient does not so understand it."). Indeed, we are unclear what this means. Plaintiff also complains of defendants' publishing in a "topic window" the message "Amtrack is wanted by the IRS." Defendants deny that they published this message. Again, plaintiff has provided no evidence that defendants were the source of this message or that anyone who viewed this message knew that "Amtrack" referred to plaintiff.

13. The individual defendants have not submitted any of their own affidavits in support of their motion for summary judgment. However, prior to obtaining counsel, they filed sworn responses to plaintiff's complaint (which the Court treated as an answer), that address some of plaintiff's charges. In re-

sponse to plaintiff's claim that defendant Law set up a chat room called "# legaltalk," defendant Law states under oath that the chat room she set up was called "lawchat," the name having been chosen because of her last name. This was a chat room where people could participate by invitation only. She denies having set up "# legaltalk," but that issue is not particularly relevant to plaintiff's defamation claim. Even if this chat room were set up by someone else, defendants could have libeled plaintiff by publishing defamatory statements about plaintiff to third parties in this chat room.

14. Plaintiff's deposition testimony is equivocal in this regard. She stated that defendant Law invited people to this chat room and "it seemed like she might have or may have made it private, but people kept coming in so it wasn't private...." (Pl.'s Dep. at 8).

set up this chat room to publicly libel plaintiff. The libel concerns an e-mail that plaintiff allegedly sent to a woman whose "nick" was "SueB312," in which SueB312 claims that plaintiff threatened to kidnap, cut-up and mutilate SueB312's children. Plaintiff states that this information was false and that defendants knew it was false,[15] but they perpetuated it anyway by discussing this defamatory e-mail on a public chat channel. Plaintiff claims that this ruined her reputation on the Internet permanently.

Defendant Law admits to opening up a chat room to try to help plaintiff straighten out this matter. She states that it was a private chat room to which she invited certain persons to try to mediate the discussion among the parties as to whether there was such an e-mail from plaintiff to SueB312. Defendant Law denies that she ever saw the e-mail and states that she never made any defamatory statements concerning the alleged e-mail. To the contrary, defendant Law expressed her opinion that she did not think there was such an e-mail.

There is no evidence in the record that either defendant published or republished the defamatory e-mail or made any statements of a defamatory nature concerning plaintiff's sending this e-mail on "# legaltalk" or in any other chat room or forum. The Court has carefully read all of the printed computer messages that plaintiff has provided. While the alleged e-mail from plaintiff to SueB312 was discussed in "# legaltalk," the two major participants in this discussion were plaintiff and SueB312. There is not a single defamatory statement about this e-mail by either defendant.

In fact, a careful reading of plaintiff's complaint and deposition indicates that she is not claiming that defendants actually made these statements. Her charge is that they created "# legaltalk" where the subject of plaintiff's alleged e-mail could be discussed publicly. There is nothing in the record to support this claim, and there is no legal basis for imposing any liability on either defendant for any defamatory statements made by others. *See, e.g.,* Communications Decency Act, 47 U.S.C. § 230(c)(1) (creating federal immunity as to any cause of action that would make interactive computer service provider liable for information originating with third-party user of service); *Zeran v. America Online, Inc.,* 958 F.Supp. 1124 (E.D.Va.), *aff'd,* 129 F.3d 327 (4th Cir.1997), *cert. denied,* 524 U.S. 937, 118 S.Ct. 2341, 141 L.Ed.2d 712 (1998); *Lunney v. Prodigy Services, Co.,* 250 A.D.2d 230, 683 N.Y.S.2d 557 (1998), *aff'd,* 94 N.Y.2d 242, 701 N.Y.S.2d 684, 723 N.E.2d 539 (1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000).

Plaintiff also alleges that during this "brief period" she was called names such as "scum," "slime," and "bitch." Again, she does not attribute this name-calling to either defendant nor does she indicate to whom, if anyone, these statements were made.

Plaintiff also alleges that defendants made defamatory statements to her Internet provider, requesting that he disconnect her for threatening bodily harm on the Internet. She has not provided any evidence to support this claim.

Plaintiff also claims that defendants told her employer that she was taking money under the table. Again, she has provided no evidence in support of this claim.

There are no other defamatory statements alleged by plaintiff. Therefore, we find that summary judgment is appropriate in defendants' favor on plaintiff's defamation claims.

### F. Filing False Affidavits with the Police

Plaintiff's final claim against defendants is that they filed false affidavits with the

---

**15.** In fact, plaintiff alleges that defendant "Law did not believe the allegation that [plaintiff] had written this damning letter and did support [plaintiff] emotionally and helped [plaintiff] somewhat restore [her] reputation...." (Pl.'s Compl.).

New London and Colorado Springs police, accusing plaintiff of being an on-line killer, in order to procure her arrest and also solicited others to do likewise. Plaintiff further alleges that defendants used "cut and paste e-mails" to have her arrested. She emphasizes repeatedly that she is not asserting a claim for false arrest in this lawsuit. *See, e.g.,* Pl.'s Mem. to Defs'. M/ to Dismiss at 4. Rather, she is complaining only of the filing of false statements and e-mails by defendants.

Defendants argue that plaintiff is attempting to assert a claim for malicious prosecution, which she cannot do because she was convicted of the crime of harassment in the second degree. Plaintiff responds that she was not convicted. She entered a plea of *nolo contendere* and she now asserts her innocence of this crime.

▆▆▆ An essential element in an action for malicious prosecution is the discharge or acquittal of the plaintiff in the prior criminal proceeding. *Fusario v. Cavallaro,* 108 Conn. 40, 142 A. 391 (1928). In this case, although plaintiff is now contesting her guilt, she cannot prove that the charges were discharged or that she was acquitted. Therefore, her claim (if any) for malicious prosecution must fail.

▆▆▆ That, however, does not dispose of plaintiff's claim against defendants for allegedly filing false affidavits. Filing false affidavits could also constitute libel, if in fact the affidavits were false and defendants acted with malice or with the intent to mislead the police. Plaintiff must show more than negligence. *See Abrahams v. Young & Rubicam,* 979 F.Supp. 122, 127 (D.Conn.1997) (citing *LaFontaine v. Family Drug Stores, Inc.,* 33 Conn.Supp. 66, 78, 360 A.2d 899 (1976)). The only evidence in the record concerning statements made to the police about plaintiff are in the police report attached to defendants' memorandum, in which the police report that defendant Law related that plaintiff had been harassing her in "chat rooms" and had been leaving threatening phone messages.

There is no evidence to support plaintiff's claim that defendants accused her of being an "on-line killer." Defendants have provided sufficient documentation to support their belief that they were being harassed by plaintiff to defeat any claim by plaintiff that they were acting with malice or with the intent to deceive the police. *See* Defs.' Affs. in Resp. to Pl.'s Compl. & Exh. # 2 (e-mails from Law to plaintiff telling plaintiff to quit calling and e-mailing). Therefore, we grant summary judgment in favor of defendants on plaintiff's defamation claim based on the filing of false reports with the police and on her malicious prosecution claim.

### CONCLUSION

Accordingly, defendants' motion to dismiss for failure to state a claim upon which relief may be granted is DENIED [**Doc. No. 76**]. Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED. Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. To the extent that plaintiff has attempted to assert a claim for assault or stalking (apart from her harassment claim), summary judgment is granted in favor of defendants. As to plaintiff's defamation claim, summary judgment is granted in favor of defendants. As to plaintiff's claim for filing false reports with the police, summary judgment is granted in favor of defendants. On plaintiff's harassment and fraud claims, summary judgment is denied.

Discovery in this case is now closed and all dispositive motions have been ruled upon. The only claims remaining in this case are plaintiff's claims for harassment and fraud. This case is referred to Magistrate Judge William I. Garfinkel for purposes of settlement.

SO ORDERED.