Allison A. FORSYTH, Plaintiff–
Appellant,

v.

FEDERATION EMPLOYMENT AND
GUIDANCE SERVICE, a Corporation
of the State of New York, Board of
Directors of Federation Employment
and Guidance Service, Alfred P. Mil-
ler, individually and as Vice President
& CEO of Federation Employment
and Guidance Service and William
Alder, individually and as Vice Presi-
dent & Controller of Federation Em-
ployment and Guidance Service, De-
fendants–Appellees.

Docket No. 03–7348.

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 2004.

Decided June 6, 2005.

Joan Franklin Mosley, New York, New York (Barbara A. Morris, Sag Harbor, New York, of counsel), for Plaintiff–Appellant.

Richard A. Levin, New York, New York (Kerri Lynn Stone, Proskauer Rose LLP, New York, New York, of counsel), for Defendants–Appellees.

Before: FEINBERG, CARDAMONE, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge.

Plaintiff Allison A. Forsyth (plaintiff or appellant), appeals from a judgment entered January 13, 2003 in the United States District Court for the Southern District of New York (Martin, J.) that granted summary judgment in favor of his employer, Federation Employment and Guidance Service, its Board of Directors, and certain of its former and current officers (collectively Federation Employment Service or defendants), and dismissed plaintiff's complaint. In that complaint, plaintiff, a black male, alleged employment discrimination based on his race and national origin. The district court granted summary judgment

to defendants on the grounds that plaintiff's claims were untimely made and, in any event, failed to state a basis on which any reasonable trier of fact could find defendants discriminated on the basis of plaintiff's race or national origin. *Forsyth v. Fed'n Employment & Guidance Serv.*, No. 97–CV–3399, 2003 WL 41994, 1, 2003 U.S. Dist. LEXIS 60, at *5–6 (S.D.N.Y. Jan. 6, 2003).

Although we affirm that judgment, we write to explain that plaintiff's claim for relief alleging salary discrimination was properly dismissed because Forsyth failed to establish genuine issues of triable fact with respect to it, and not because plaintiff's claim was time-barred as the district court believed. Further, we note at the outset that on the somewhat out-of-the-ordinary facts of this case, the district court and the defendants were excused from their duty imposed by Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, *see* Fed. Proc. Rules Service, Dist. Court for the S. & E. Dist. of N.Y., Rule 56.2, to provide notice to *pro se* plaintiff of the consequences of defendants' motion for summary judgment. A party's status as either represented or *pro se* is critical under Rule 56.2. Here plaintiff commenced the instant litigation while represented by counsel, but later, 13 months after having been served by defendants' motion, he began proceeding *pro se.* This change in status—changing horses in the middle of the stream, so to speak— makes the Rule 56.2 issue in this case unique. As we explain in the discussion that follows, the district court and defendants were properly relieved of any duty to notify plaintiff under Rule 56.2.

## BACKGROUND

### A. *Facts*

Plaintiff is a black male whose country of origin is Grenada. Federation Employ-

ment Service is a New York not-for-profit mental health and social services agency, for which plaintiff began working in April 1989 as a bookkeeper in the accounting department. When he was hired 16 years ago, Forsyth was the only black employee among the 18 employees in that department. Plaintiff resigned from his position in June 1996. The parties disagree with respect to whether that resignation was voluntary as defendants maintain or was a constructive termination as plaintiff asserts.

The complaint alleges that plaintiff's employer discriminated against him on the basis of his race and national origin when making salary increase and promotion decisions, and that defendants constructively discharged him. These claims were brought under Title VII, *see* 42 U.S.C. § 2000e *et seq.* (2001), 42 U.S.C. § 1981, New York State Human Rights Law § 296, *see* N.Y. Exec. Law § 296 (2004), and the federal and New York State Constitutions. A claim under § 125 of the Administrative Code of the City of New York was included in the complaint, but that claim is not before us.

Plaintiff raises a number of arguments in support of his discrimination cause of action, but only the salary discrimination claim warrants discussion. To support that claim, Forsyth alleged that throughout his employment at Federation Employment Service he was paid less than similarly situated white male and female employees. In his affidavit in opposition to summary judgment, he discusses three fellow employees whom he maintains were given more frequent wage increases or higher entry salaries than Forsyth received—Galina Khasin, Susan McLean, and Thomas Ferri. Plaintiff also maintains that wage increases to him were less

than those given to other similarly situated employees. But, at least with respect to the two employees for which defendants provided wage increase information—Galina Khasin and Thomas Ferri—the difference appeared to be in the starting wage, rather than in pay increases, which were substantially the same.

Galina Khasin was hired as an accountant in September 1989, the same year Forsyth began employment. Ms. Khasin made $4,000 more at the time of hire as an accountant than plaintiff was then earning as a bookkeeper, although they both had the same level of education. Plaintiff pursued a graduate degree during much of his employment and contends therefore that he was as qualified as Khasin for the position of accountant. Yet, as her employment application showed, Khasin had much more bookkeeping and accounting experience than plaintiff did. Because much of Khasin's experience was in Russia, rather than in the United States, and because, according to plaintiff, the Russian accounting system is different from the U.S. accounting system, plaintiff suggested that Khasin's experience was not as extensive as it appeared. Nonetheless plaintiff offered no evidence to rebut defendants' explanation for the discrepancy in wages, that is, that Khasin was hired as an accountant and given a higher salary than plaintiff because she had more experience.

Susan McLean was hired as a senior accountant in 1994. McLean's entry salary was $8,000 more than plaintiff was receiving at the time when McLean was hired. Forsyth avers that he had expressed interest in and was qualified for the position McLean was hired to fill, but that it went to McLean instead even though plaintiff asserts she was not qualified. In his deposition plaintiff admitted that he did not think McLean was given the job in preference to him based on his race, but also states that the decision could have been based on his nationality. Regardless, plaintiff failed to offer any proof sufficient to show that he was as qualified or more qualified than McLean for the position of senior accountant.

Defendants hired Thomas Ferri, a white male, about three and one-half years after plaintiff began working. Plaintiff maintains that he was qualified for Ferri's position and, in fact, had to train Ferri when he started. Ferri's starting salary was $10,000 more than plaintiff's salary at the time. Defendants explained that Ferri was given the job, and a higher salary, because he had seven and one-half more years of accounting experience than Forsyth did. Plaintiff failed to rebut this explanation for defendants' decision to hire Ferri rather than him.

## B. *Prior Proceedings*

On March 18, 1994 plaintiff complained to his supervisor, William Adler, that he felt he was receiving disparate treatment and that he believed defendants' salary decisions with respect to Khasin, McLean, and Ferri constituted discrimination against him. Receiving no response to that claim, plaintiff filed a charge of discrimination with the New York State Division of Human Rights and the Equal Employment Opportunity Commission of the United States (EEOC). On April 25, 1997 within 90 days of receiving a right to sue letter from the EEOC on January 26, 1997, plaintiff filed his complaint in the instant litigation.

Defendants filed an answer denying plaintiff's allegations of discrimination. After the close of discovery in July 2000 defendants moved for summary judgment. The district court informed plaintiff that his response was due on July 14, 2000. *Forsyth v. Fed'n Employment & Guidance Serv.,* No. 97–CV–3399, 2001 U.S. Dist.

LEXIS 1003, at *1 (S.D.N.Y. Feb. 8, 2001). Six months later on February 8, 2001 when it appeared that plaintiff's then-counsel—Barbara A. Morris, Esq. and Frederick H. Hayes, Esq.—had failed to respond to defendants' motion, the district court issued a *sua sponte* order, ordering plaintiff to show cause why it should not grant summary judgment. *Id.* at *9. One of plaintiff's counsel, Ms. Morris, submitted two doctor's notes and her own affidavit to the district court explaining that she was having medical difficulties. The district court was not persuaded by these submissions that she was so incapacitated as to be unable to work on the response to defendants' motion. *Id.* at *7. When neither plaintiff nor his counsel responded to the trial court's order to show cause, plaintiff was given the opportunity to obtain new counsel rather than have the court dismiss his case and grant summary judgment to defendants, provided he first reimburse defendants for the amount of the attorney's fees they had incurred from July 7, 2000. *Forsyth v. Fed'n Employment & Guidance Serv.,* No. 97–CV–11446, 2001 U.S. Dist. LEXIS 11446, at *14–15 (S.D.N.Y. Aug. 9, 2001).

Although plaintiff never retained new counsel, he did pay defendants' attorney's fees and, proceeding *pro se,* filed an affidavit in opposition to defendants' motion for summary judgment on April 2, 2002. The district court then directed the parties to furnish additional information regarding Khasin's, Ferri's, and plaintiff's employment with defendants on July 26, 2002. Continuing to act *pro se,* plaintiff responded to this order on August 15, 2002.

The district court entered an order on January 8, 2003 granting defendants' motion for summary judgment and dismissing plaintiff's complaint. *Forsyth,* 2003 WL 41994 at *2, 2003 U.S. Dist. LEXIS 60, at *7. Plaintiff appeals from the judgment entered on that order and from the order dated March 4, 2003 denying his motion for reconsideration.

## DISCUSSION

### I Standard of Review

We review *de novo* a grant of summary judgment, applying the same standards as the district court. *See Taggart v. Time Inc.,* 924 F.2d 43, 45–46 (2d Cir.1991). Summary judgment is appropriate when after viewing all the facts in the record in a light most favorable to the non-moving party, there is no genuine issue of material fact present, so that "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Such relief for the moving party may be appropriate after discovery if the non-moving party cannot prove an "essential element of her case," that is, one for which she bears the burden of proof. *See Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004).

In determining whether the district court acted properly in granting summary judgment, "we resolve all ambiguities and draw all reasonable inferences against the moving party." *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997). Where the non-moving party is proceeding *pro se,* the court must interpret that party's supporting papers liberally, that is, interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

More caution should be exercised in affirming the grant of summary judgment in a discrimination case because "smoking gun" evidence of discriminatory intent is rare and most often must be inferred. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir.2001). Yet, this

drastic remedy may be proper in such a case where the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e).

## II Notice Under Rule 56.2

Forsyth was proceeding *pro se* at the time the motion for summary judgment was granted, but was represented by counsel when the motion was made and for 13 months thereafter. Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York states

> Any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, a "Notice To Pro Se Litigant Opposing Motion for Summary Judgment" [ (notice) ] in the form indicated below.

Fed. Proc. Rules Service, Dist. Court for the S. & E. Dist. of N.Y., Rule 56.2. The Rule goes on to specify the necessary content of the notice, including, for example, a warning to *pro se* non-movants that they "must submit evidence, such as witness statements or documents, countering the facts asserted by the [movant] and raising issues of fact for trial." *Id.*

The Board of Judges of the Southern and Eastern Districts of New York adopted Local Civil Rule 56.2 on November 18, 1999. The adoption of this rule came in response to our decision in *Vital v. Interfaith Med. Ctr.,* where we reiterated the rule regarding notice to *pro se* litigants: " '[t]he failure of a district court to apprise [*pro se* ] litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily

grounds for reversal.' " 168 F.3d 615, 620 (2d Cir.1999) (quoting *Ruotolo v. IRS,* 28 F.3d 6, 8 (2d Cir.1994) (per curiam)).

Local Civil Rule 56.2 is based on this Circuit's long held concern with the disparity in knowledge of court procedures between a lawyer and a *pro se* litigant. When a *pro se* 's represented opponent files a motion for summary judgment supported by affidavits, the *pro se* litigant cannot be presumed to be aware of the fact that he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial. *See Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

Thus, failure by the represented movant and the trial court to serve notice in accordance with Rule 56.2 ordinarily results in reversal of a grant of summary judgment, regardless of the strength of the movant's motion, unless it is clear that the *pro se* party understood the nature and consequences of summary judgment. *Irby v. N.Y. City Transit Auth.,* 262 F.3d 412, 413 (2d Cir.2001) (per curiam); *cf. Arum v. Miller,* 331 F.Supp.2d 99, 105 (E.D.N.Y. 2004) (noting that in prior district court proceedings, "[t]he [c]ourt ... declined to consider a summary judgment motion on the merits until, in accordance with Local Civil Rule 56.2, notice was given to the pro se [p]laintiff"). Here, neither the district court nor the defendant employer provided the *pro se* plaintiff with the notice required by Rule 56.2. Normally that would justify our reversing the grant of summary judgment. *See Irby,* 262 F.3d at 413. However, we decline to do so here because, as discussed below, we find that Forsyth understood the nature and consequences of summary judgment.

At the time Federation Employment Service served its summary judgment motion and for 13 months thereafter,

plaintiff was represented by counsel. Thus, this case presents the question of whether Rule 56.2 should apply where the non-moving party was not *pro se* at the time the motion for summary judgment was filed. On its face, the Rule does not indicate whether it applies under such circumstances. Determining that the Rule would not apply in this case runs the risk that a litigant, whose counsel is dismissed after a motion for summary judgment is served, will be left uninformed and unfairly exposed to summary judgment. This is particularly true where, as here, the district court dismissed plaintiff's counsel for failure to respond to the summary judgment motion. But, perhaps that concern is better addressed in a suit brought by plaintiff against counsel who failed to inform him of the consequences of summary judgment. We need not decide the appropriate interpretation of the Rule today, however, because we would not reverse even were the notice requirement to apply in this case.

Regardless of whether the district court or defendants had a duty to notify Forsyth of the consequences of summary judgment under Rule 56.2, we decline to reverse the grant of summary judgment because plaintiff's submissions to the district court show that he understood his responsibilities under Rule 56. *See Irby,* 262 F.3d at 413. To determine whether a *pro se* party had such an understanding, we examine the record as a whole. *McPherson v. Coombe,* 174 F.3d 276, 281 (2d Cir.1999). We may consider the papers submitted by that party and the party's participation in the district court proceedings. *Vital,* 168 F.3d at 621 (finding that where *pro se* non-movant submitted only one paragraph response, which attached one exhibit, and did not submit a 56.1 statement, we could not determine the *pro se* party "knew that he was required to present counter-affidavits or other documentary evidence"). Al-

though not dispositive, a *pro se* party's failure to submit a statement of material facts required by Local Civil Rule 56.1, *see* Fed. Proc. Rules Service, Dist. Court for the S. & E. Dist. of N.Y., Rule 56.1, is some evidence that the *pro se* party did not understand her duties in response to a motion for summary judgment. *See Dais v. Lane Bryant, Inc.,* No. 97–CV–2011, 2000 WL 869489, at *2, 2000 U.S. Dist. LEXIS 8888, at *8 (S.D.N.Y. June 29, 2000).

■■■ Courts have identified certain actions taken by *pro se* non-movants that are not enough, standing alone, to prove that the *pro se* non-movant understood the consequences of the summary judgment motion brought against her. For example, a *pro se* litigant does not lose the right to notice under Rule 56.2 simply because she files some response to the opposing party's motion for summary judgment. *Vital,* 168 F.3d at 621. Also, even where a non-movant *pro se* party's papers specifically cite to Rule 56, the court may not assume, on that ground alone, that the *pro se* party understood her duties in opposing a motion for summary judgment. *McPherson,* 174 F.3d at 281.

Based on plaintiff's submissions to the district court, including his affidavit in opposition to the motion for summary judgment, and his affidavit in response to Judge Martin's order to show cause, we think it clear that plaintiff understood his responsibilities under Rule 56. In his seven-page affidavit in opposition to the motion for summary judgment, plaintiff set forth the majority of the facts included in his briefs to this Court, i.e., the critical facts of his case, and stated that he "was paid less than similarly situated employees (a term which I now understand)." He also asserted that he continually sought promotion and that he was not informed of

available accounting positions. Both assertions suggest he understood his duties in opposing a motion for summary judgment on his claim of discriminatory denial to promote him. In the affidavit in response to Judge Martin's order, also seven pages long, plaintiff cites case law and provides a legal analysis of the concept of similarly situated employees. In addition, he attached four exhibits to this affidavit, and set out facts attempting to show that he was similarly situated to Ferri and Khasin, the two employees mentioned in Judge Martin's order.

The linchpin of Rule 56.2 is whether a *pro se* plaintiff like Forsyth ultimately is aware of the basic requirements and ramifications of the adjudication of the summary judgment motion against him. Here, plaintiff's opposition papers filed *pro se* indicated that he understood his responsibilities under Rule 56. Hence, under these circumstances, even if Rule 56.2 applies where the non-moving party was not *pro se* at the time the motion for summary judgment was served, neither the district court nor defendants were required to provide plaintiff with notice under Rule 56.2.

### III Plaintiff's Salary Discrimination Claim

#### A. *Timeliness*

One of the grounds on which the district court dismissed plaintiff's complaint was timeliness. A complainant has 300 days from the date of the alleged unlawful employment practice to institute proceedings with a state or local agency. Otherwise, the complainant has only 180 days from the date of the alleged unlawful employment practice to file a complaint with the EEOC. 42 U.S.C. § 2000e–5(e)(1) (2001). Thus, plaintiff's Title VII claims regarding actions taken 300 days prior to March 24, 1994—the date on which he filed a charge of discrimination with the New York State

Division of Human Rights and the EEOC—are time-barred. *See id.*

Section 296 of the New York State Human Rights Law, *see* N.Y. Exec. Law § 296, N.Y. City Admin. Code § 8–502 (1993), and 42 U.S.C. § 1981, allow complainants three years from the date of the injury allegedly caused by discrimination to file suit. *See Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 n. 5 (2d Cir.1998). Plaintiff's claims for relief under these laws are therefore time-barred unless they occurred three years prior to April 25, 1997, the date on which the instant complaint was filed.

 The statute of limitations for an unlawful employment practice begins to run when the unlawful practice occurs. Discrete discriminatory acts are time-barred, notwithstanding the fact that "they are related to acts alleged in timely filed charges," if they fall outside of the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). At the same time, each distinct discriminatory act starts the clock running again for purposes of filing charges alleging that act. *Id.* For most discrete discriminatory acts, i.e., termination, failure to promote, denial of transfer, or refusal to hire, that time is obvious; it is the date the actual termination or decision not to promote occurred. *Id.* at 113–14, 122 S.Ct. 2061. For others, such as salary discrimination, the discrete act analysis is not so clear-cut.

 The Supreme Court had explained that "[e]ach week's paycheck that delivers less to a [disadvantaged class member] than to a similarly situated [favored class member] is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date [of Title VII]." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir.1997)

(quoting *Bazemore v. Friday,* 478 U.S. 385, 395–96, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (Brennan, J., concurring)). As we explained in *Pollis,* discriminatory pay scales are not continuing violations. *Id.* at 118–19. Instead, such scales involve a number of individual and separate wrongs rather than one course of wrongful action. *Id.* at 119. And, each repetition of wrongful conduct may, as *Morgan* taught, be the basis of a separate cause of action for which suit must be brought within the limitations period beginning with its occurrence. A salary structure that was discriminating before the statute of limitations passed is not cured of that illegality after that time passed, and can form the basis of a suit if a paycheck resulting from such a discriminatory pay scale is delivered during the statutory period. *Bazemore,* 478 U.S. at 396 n. 6, 106 S.Ct. 3000.

Both Federation Employment Service and the district court seem to read *Morgan* to overturn *Bazemore,* and to render plaintiff's salary discrimination claim untimely. *Forsyth,* 2003 WL 41994 at *1, 2003 U.S. Dist. LEXIS 60, at *5–6. Such view fails to recognize that *Morgan* specifically adopts the understanding set forth in *Bazemore* that every paycheck stemming from a discriminatory pay scale is an actionable discrete discriminatory act. *See Morgan,* 536 U.S. at 111–12, 122 S.Ct. 2061. Even if defendants are correct in stating that plaintiff was not eligible for the protection of the concept of continuing violation, the district court was not correct to conclude that plaintiff needed to rely on the continuing violation doctrine in the first place.

■■ It is evident that a discriminatory pay schedule is a discrete act, even though it involves repeated conduct. *Id.* at 112, 122 S.Ct. 2061. Any paycheck given within the statute of limitations period therefore would be actionable, even if

based on a discriminatory pay scale set up outside of the statutory period. But, a claimant could only recover damages related to those paychecks actually delivered during the statute of limitations period. *See Pollis,* 132 F.3d at 119. Plaintiff's salary discrimination claim, then, was not time-barred as the district court wrongly believed, but his recovery would be limited to those paychecks he received within the relevant statute of limitations period, i.e., paychecks received within 300 days prior to March 24, 1994, or paychecks received after that date. As he filed a claim with the EEOC and the New York State Division of Human Rights on March 24, 1994, plaintiff's salary discrimination claim under Title VII would not be time-barred because he continued working at Federation Employment Service and receiving a paycheck, until June 6, 1996, the date of his resignation. Similarly, plaintiff's claims under 42 U.S.C. § 1981 and § 296 of the New York State Human Rights Law would not be time-barred because he brought this suit on April 25, 1997 and was still working in 1996. Based on the above analysis, we cannot agree with that portion of the district court's holding that ruled plaintiff's salary discrimination claims time-barred.

### B. *Failure to Establish a* Prima Facie *Case*

■ Nonetheless we affirm the trial court's grant of summary judgment in favor of defendants. We agree with the district court that plaintiff failed to proffer sufficient proof to establish a *prima facie* case of salary discrimination. On a motion for summary judgment in a discrimination case the plaintiff must provide the trial court with more than his own conclusory allegations declaring discrimination was present. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973); *Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365, 370 (2d Cir.1989). Here, plaintiff was able to prove only that his salary was less than other Federation Employment Service employees' salaries. Standing alone, that is not enough proof of discrimination to survive a motion for summary judgment.

## CONCLUSION

Accordingly, the judgment of the district court granting defendants' motion for summary judgment and dismissing plaintiff's complaint is affirmed.