Stephen CESLIK, Plaintiff,

v.

MILLER FORD, INC. a/k/a Miller Ford–Nissan–VW, Defendant.

Civil No. 3:04CV2045(AWT).

United States District Court, D. Connecticut.

Sept. 30, 2008.

Stephen Ceslik, Milford, CT, pro se.

Robert Avery Rhodes, Halloran & Sage, Westport, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Plaintiff Stephen Ceslik ("Ceslik") brings this action against the defendant Miller Ford, Inc. ("Miller Ford"), setting forth in the Complaint claims for discrimination because of AIDS and failure to accommodate an asthmatic condition in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and for sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In the Amendment to 12/3/04 Complaint (the

"Amendment"), Ceslik sets forth additional claims for discrimination based on sexual orientation in violation of the Conn. Gen. Stat. § 46a–81c; defense counsel's conduct; retaliation in violation of the First Amendment; and sex discrimination. Miller Ford has moved for summary judgment on, or dismissal of, the claims set forth in the Complaint and the Amendment. For the reasons stated below, the motion is being granted.

## I. FACTUAL BACKGROUND

On January 24, 2003, Miller Ford hired Ceslik to work as a sales person at its dealership in Fairfield, Connecticut. Ceslik worked for the defendant from January 29, 2003 until his employment was terminated on May 3, 2003.

### A. Claims Concerning ADA Violations

#### 1. Asthmatic Condition

Ceslik contends that while he was employed by Miller Ford, another Miller Ford employee named Robert Hayes ("Hayes") and others would take unauthorized smoking breaks near him in the showrooms and outside, aggravating his asthmatic condition. Miller Ford had a smoking policy that limited smoking to a designated area. Ceslik contends that he complained to Trevor Holmes ("Holmes"), John Franchini ("Franchini"), and Ralph Frascatore ("Frascatore"), who were Miller Ford managers. Although Ceslik argues in his papers that management did not accommodate his asthmatic condition because it did not do anything to enforce the smoking policy, he testified that Holmes told him he would take care of Hayes's smoking in the showroom and that he never saw Hayes smoking in the showroom again.

#### 2. Neck and Back Injuries

Ceslik contends that Miller Ford did not accommodate his disabilities because it required him to shovel snow, which aggravated his neck and back. Ceslik claims that Miller Ford knew about his neck and back injuries because he had informed the company orally and in writing. According to Ceslik, Miller Ford was aware of his medical conditions because he had given Holmes a letter from a doctor with a note concerning his need to wear athletic shoes. He provided Holmes with this note in 2000 while they both worked at Napoli Motors, not Miller Ford. The plaintiff also claims that the stress he felt because of the conditions under which he worked at Miller Ford aggravated his neck pain and that Miller Ford was aware of his neck injury because Sean Armstrong, a manager, witnessed the fact he was suffering neck pain and gave him medication to ease it. Miller Ford never received a letter from a doctor stating that Ceslik was unable to shovel snow.

#### 3. Other Ailments; Absence from Work

The plaintiff also argues he had high blood pressure, depression, and ulcer problems and that Miller Ford knew about these conditions. Ceslik only missed one day of work at Miller Ford, and he provides no evidence that Miller Ford had knowledge of any such conditions.

### B. Claims Concerning Sexual Harassment and Hostile Work Environment

Ceslik states that he was sexually harassed by co-workers and management at Miller Ford. He claims that he was sexually harassed when Frascatore recounted a sexually explicit story about bestiality on one occasion. The plaintiff also bases a sexual harassment claim on Dawn Brennan

telling a story involving scatology. He also contends that Robert Pavia ("Pavia") stated that if one of the staff contracted AIDS, Ceslik's presence would create financial liability. Ceslik also asserts that Paul Miller ("Miller"), Miller Ford's owner, harassed him by leaving sexually explicit gay magazines and an anti-homosexual cartoon in the mailbox at his house on the same day that Miller received the Complaint. Ceslik notes that Miller does not live far from Ceslik and drives by Ceslik's house almost each day that he goes to the dealership.[1]

Ceslik claims that his co-workers created a hostile work environment. Specifically, Ceslik claims that he complained to management concerning Hayes's interference with his interactions with his customers. Ceslik states that on one occasion Hayes assaulted him in the parking lot by using obscene words, such as "fuck," "motherfucker," "white honkey," and "son of a bitch," and that Hayes was being threatening and intimidating. (Compl. (Doc No. 1) at p. 9.) Ceslik claims that Hayes also challenged him to a fight at this time; Ceslik further states that a customer witnessed this incident. The plaintiff also states that Hayes said he was "going to get [him]" and called him "asshole" on various occasions. (*Id.* at p. 11.) He further states that Leonard Burton ("Burton") made snide comments and swore at him. Ceslik contends that Burton was violent and unruly at a meeting. He claims that at another time, Burton pushed him in front of management and told him to "get the hell out of [his] way." (*Id.* at p. 13.) The plaintiff also claims that Aihem Alkatib ("Alkatib") told him to "go work in the men's room and give blow jobs-that's where you do [your] best

work." (*Id.* at p. 13.) In the Amendment, Ceslik contends that Alkatib was abusive and violent and that Alkatib called September 11, 2001 "America's just reward." (Amendment (Doc No. 66) at p. 2.) Ceslik also states in the Amendment that Alkatib ate in an office in which Ceslik was working, which was a violation of company policy.

In addition to harassment from specific co-workers, Ceslik contends that certain additional situations created a hostile work environment, exacerbating his blood pressure problem. He states that materials depicting him engaging in a sexual act with his mother and referring to him as being gay were left on his desk. The plaintiff also states that on one occasion Alkatib and Hayes threatened each other with physical violence. Ceslik further claims that his co-workers' swearing and verbal fights created a hostile work environment. Finally, Ceslik contends that he observed Miller having an affair with a female employee in Miller Ford's records area and that witnessing this situation "offended" him and made his work environment "awkward." (Amendment at p. 7.)

Ceslik also contends that he was the victim of hate crimes. He claims Hayes called him a "fudge packing queer," "fag," "cock sucker," and "ass licker." (*Id.* at p. 7.) Ceslik states that on another occasion Alkatib called him a "penis worshiper" and "fag." (*Id.* at p. 8.) The plaintiff also states that Len Burton told him to "blow him." (*Id.*)

## C. Termination of Employment

On May 3, 2003, Ceslik's employment was terminated. Ceslik states that Miller told him Miller was "letting [him] go be-

---

1. It is unclear whether Ceslik relies on these facts to support his sexual harassment claim. The court assumes he does.

cause [Miller doesn't] like gays." (Compl. at p. 6.) He further contends that Miller perceived him as having AIDS and fired him because of a stated fear that Miller or other employees would contract AIDS from the plaintiff, creating financial liability. During his deposition, however, Ceslik testified that the statement concerning liability was related to a meeting in which Pavia discussed the sexual harassment claims made by two female employees against Ceslik.[2] According to Ceslik, these claims were false and served as a pretextual reason for firing him. Ceslik argues that the firing was also partially based on retaliation for his filing complaints.

Upon firing Ceslik, Miller Ford did not provide him with a pink slip. Ceslik states that although he requested a pink slip, he never received one. Miller Ford provided pink slips to other employees upon termination of their employment.

After firing Ceslik, Miller Ford tried to prevent him from receiving unemployment compensation benefits. The Unemployment Compensation Commission held a hearing and awarded Ceslik benefits; Ceslik states that he discovered during these proceedings that Miller Ford failed to properly maintain his employment file. The commission stated that "[t]he burden of proof is on the employer" and found that Ceslik had been "terminated for reasons other than misconduct." (*Id.* at p. 17.)

### D. Post–Termination Issues

Ceslik asserts various claims based on situations that arose after his employment was terminated. He contends that Miller Ford fabricated documents in connection with this lawsuit. The plaintiff also claims that Pavia made misrepresentations to the EEOC and that Miller Ford's attorneys made misrepresentations and slandered him during the course of this litigation.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine

---

2. In his deposition, Ceslik states that Pavia told him one of the females who claimed he sexually harassed her was the same female employee Ceslik claims he witnessed having an affair with Miller in the records area.

issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in [its] favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902

F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings because the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Because the plaintiff in this case is proceeding *pro se*, the court must read

the plaintiff's pleadings and other memoranda liberally and construe them in a manner most favorable to the plaintiff. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Moreover, because the process of summary judgment is "not obvious to a layman," *Vital v. Interfaith Medical Ctr.*, 168 F.3d 615, 620 (2d Cir.1999) (internal quotation marks omitted) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988)), the district court must ensure that a *pro se* plaintiff understands the nature, consequences and obligations of summary judgment. *See id.* at 620–21. Thus, the district court may itself notify the *pro se* plaintiff as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the *pro se* plaintiff defendant sent the *pro se* plaintiff the notice required by Local Rule 56(b). In addition, after reviewing the defendant's memorandum in support of summary judgment, the plaintiff's submissions in opposition to summary judgment, and the numerous other submissions in this case by the plaintiff, the court concludes that the plaintiff understands the nature, consequences and obligations of summary judgment.

## III. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

The defendant is entitled to summary judgment on several claims set forth in the Amendment because the plaintiff has not exhausted his administrative remedies with respect to those claims. Those claims were not included in the complaint filed with the EEOC and are not reasonably related to the claims in the EEOC complaint.

Before an individual may file a complaint in federal court bringing claims pursuant to Title VII or the ADA, he must exhaust his administrative remedies by timely filing a complaint with the EEOC. *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir.2001) (discussing exhaustion under Title VII); *Rieger v. Orlor, Inc.*, 427 F.Supp.2d 105, 114 (D.Conn.2006) (noting the applicability of Title VII's requirements, including exhaustion, to ADA claims). If the individual has not alleged a claim in the EEOC complaint, "federal courts generally have no jurisdiction to hear [it]." *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 613 (2d Cir.1999). Only if the Title VII or ADA claimant obtains a right-to-sue letter from the administrative agency may he bring suit in federal court. *Id.* at 613–14; *see* 42 U.S.C. § 2000e–5(e)–(f). Requiring that the complaint first be filed with the EEOC and a right-to-sue letter be obtained gives the agency a chance to remedy the situation. *Shah*, 168 F.3d at 614.

Failure to include a claim "reasonably related" to those alleged in the EEOC complaint, however, will not preclude federal jurisdiction over that claim. *Stewart v. U.S. INS.*, 762 F.2d 193, 198 (2d Cir. 1985). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.' " *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir.2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir.2003)). A claim is "reasonably related" if it would reasonably be included in the expected scope of the EEOC's investigation, arises from retaliation based on the plaintiff's filing with the EEOC, or "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.2002) (quoting *Butts v. City of*

*N.Y. Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1402–03 (2d Cir.1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 693 (2d Cir.1998)).

■ In this case, Ceslik did not exhaust his administrative remedies with respect to several claims. His EEOC complaint does not cover claims concerning a hostile work environment based on any pro-terrorism statements by Alkatib; Miller Ford's failure to post notices concerning the ADA and its failure to accommodate his neck and back injuries by requiring him to shovel snow; gender discrimination; and Miller's alleged affair.

The EEOC would not have had notice of these additional claims based on its investigation of the matters listed in Ceslik's EEOC complaint because they are not reasonably related to the claims set forth in the EEOC complaint. The claims in the EEOC complaint were limited to Miller Ford's failure to accommodate Ceslik's asthmatic condition, sexual harassment, hostile work environment, hate crimes, and termination of Ceslik's employment; and to the extent the hostile work environment claims included Alkatib or Miller, they did not cover any statements concerning terrorism or an affair, respectively. One could not reasonably expect that an ADA claim concerning an asthmatic condition or a sexual harassment claim under Title VII would give notice about claims concerning all disabilities or all discrimination.

## B. ADA Claims

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a) (2000). The plaintiff can establish a *prima facie* case under the ADA by showing that "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability." *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998). A disability is a(1) "physical or mental impairment that substantially limits one or more of the major life activities ..., (2) a record of such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2000).

■ In the major life activity of working, one is substantially limited if he is "precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). If corrective measures mitigate the condition so that the individual is no longer substantially limited, he will not be considered disabled. *Id.* at 481–88, 119 S.Ct. 2139.

■ In the present case, Ceslik does not produce evidence that could support a conclusion that he is substantially limited in his ability to breathe or work due to his asthmatic condition or neck and back injuries. He presents no evidence that he is precluded from anything more than the particular job of a salesman at Miller Ford. In fact, Ceslik presents little evidence that he is precluded from working as a salesman at Miller Ford. Ceslik himself claims he only missed one day of work. Ceslik fails to produce evidence that his breathing is substantially limited by his asthmatic condition. As the Second Circuit found in *Muller v. Costello,* 187 F.3d 298 (2d Cir.1999), "there is not enough evidence of off-the-job breathing problems to find a substantial limitation of that life activity." *Id.* at 314. "Without actual evi-

dence of difficulty outside of work ..., we will not speculate on the severity of a disability...." *Id.* The evidence here could not support a conclusion that Ceslik's ability to work or breathe has been substantially limited by his asthmatic condition.

■■■ Even if Ceslik's asthmatic condition and neck and back injuries were disabilities, he has not produced evidence that Miller Ford failed to accommodate a disability. Under the ADA, Miller Ford could be liable for discrimination for "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5) (2000).

However, there is no evidence that Miller Ford failed to make a reasonable accommodation for a *known* limitation. Ceslik never saw Hayes smoking in the showroom again after Holmes told Ceslik he would take care of that issue. With respect to the neck and back injuries, Ceslik does not produce evidence that Miller Ford knew about such a disability. He merely asserts that Miller Ford knew.

Accordingly, the defendant is entitled to summary judgment on the plaintiff's ADA claims.

## C. Sexual Harassment Claims

To state a claim for sexual harassment under Title VII, a plaintiff must prove that his employer "fail[ed] or refuse[d] to hire or ... discharge[d][him], or otherwise ... discriminate[d] against [him] with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race ... [or] sex." *See* 42 U.S.C. § 2000e–2(a)(1) (2000). Thus, a plaintiff must first show that the alleged discrimination re-

sulted from his membership in a protected class. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001) ("It is axiomatic that mistreatment at work ... is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.").

■■■ If he satisfies this threshold requirement, a plaintiff may prevail on a claim of sexual harassment under either a direct discrimination theory, which is also known as quid pro quo discrimination, or a hostile work environment theory. *See, e.g., Leibovitz v. N.Y. City Transit Auth.,* 252 F.3d 179, 188 (2d Cir.2001). To succeed on a quid pro quo discrimination theory, a plaintiff must show that tangible employment actions were linked to the refusal or acceptance of a supervisor's sexual advances. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *see also Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57–58 (2d Cir.2004). To prevail on a hostile work environment theory, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citations omitted). The plaintiff must demonstrate "not only that [he] subjectively perceived the environment to be [hostile or] abusive, but also that the environment was objectively hostile and abusive" to survive summary judgment. *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir.2006) (quoting *Hayut v. State Univ. Of N.Y.,* 352 F.3d 733, 745 (2d Cir.2003)).

■■■ If the plaintiff's co-workers were responsible for the conduct constituting

the hostile work environment, the employer will only be liable if the plaintiff "demonstrate[s] a specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir.2004). A plaintiff may demonstrate this basis by showing that "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id.* at 152 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)).

■ A court considers several factors in determining whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. The plaintiff may show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotation marks omitted).

■ Here, Ceslik fails to produce evidence that he suffered discrimination as a member of a protected class under Title VII. Ceslik's claims for sexual harassment are based on either sexual orientation (*See, e.g.*, Compl. at pp. 5–6) or an unknown basis (*See, e.g.*, Compl. at pp. 3–4 (discussing claims concerning scatology and bestiality)). Sexual orientation, however, is not a protected class under Title VII. *See, e.g.*, *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir.2000) ("Title VII does not prohibit harassment or discrimination because of

sexual orientation."). Ceslik's claim based on a hostile work environment theory resulting from the aggravation of his medical conditions is also not legally cognizable under Title VII because Ceslik does not bring the claim as a member of a protected class.

■ If Ceslik is claiming racial discrimination based on the incident in which Hayes, his co-worker, called him a "white honkey" (Compl. at p. 9), he still fails to produce evidence that could establish that he was subjected to a hostile work environment. Even if this individual incident were sufficiently severe, which it was not,[3] Hayes was Ceslik's co-worker, and there is no evidence imputing Hayes's conduct to Miller Ford. Ceslik presents evidence in the form of an anonymous letter from a customer who reportedly witnessed the incident and evidence that management knew the letter was part of Ceslik's file. However, management addressed the harassment. Ceslik himself states that Franchini met with him and Hayes concerning the incident and advised Ceslik to report Hayes to him if Hayes continued harassing him.

Accordingly, the defendant is entitled to summary judgment on Ceslik's claims concerning sexual harassment, including a hostile work environment.

### D. Claims Concerning Counsel's Conduct

■ Claims concerning the acts and omission of another may arise under an agency theory. However, "Connecticut courts have long recognized a distinction between employees or agents and independent contractors with respect to imposing vicarious liability on the employer." *Men-*

---

**3.** *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.1994))).

*zie v. Windham Cmty. Mem'l Hosp.*, 774 F.Supp. 91, 94 (D.Conn.1991). On one hand, an agency relationship arises where one person consents to have another person act under his control and on his behalf and the other person agrees to do so. *Id.* (quoting *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 464 A.2d 6, 13 (1983)). On the other hand, "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without [being] subject to the control of his employer, except as to the result of his work" is an "independent contractor." *Id.* (internal quotation marks omitted) (quoting *Panaro v. Electrolux Corp.*, 208 Conn. 589, 545 A.2d 1086, 1093 (1988)).

 Thus, the attorneys in this case are independent contractors employed by the law firm of Halloran & Sage, LLP, rather than employees of Miller Ford. Although the client may retain some control over the final results, the practice of law is not done under the direct supervision of the client. Therefore, Miller Ford cannot be held liable for the actions of its attorneys in defending this lawsuit.

Accordingly, the defendant is entitled to summary judgment on the claims in the Amendment concerning attorneys' misrepresentations, slander, and conspiracy to cover up discrimination.

### E. Claims Concerning Statements Made in Relation to Judicial And Quasi–Judicial Proceedings

 "In Connecticut, parties to or witnesses before judicial or quasi-judicial proceedings are entitled to absolute immunity for the content of statements made therein." *Field v. Kearns*, 43 Conn.App. 265, 682 A.2d 148, 151 (1996) (citing *Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337, 1338–39 (1986), *superseded by statute on other grounds as recognized in Chadha v. Char-*

*lotte Hungerford Hosp.*, 272 Conn. 776, 865 A.2d 1163 (2005)). The rationale for this grant of immunity is a desire not to chill speech in such proceedings. *See DeLaurentis v. City of New Haven*, 220 Conn. 225, 597 A.2d 807, 826 (1991) (citing *Petyan*, 510 A.2d at 1338). For this reason, the immunity also applies to "words used in the pleadings and documents used to prosecute the suit." *Id.* at 826.

 Ceslik claims that Pavia made misrepresentations to tribunals, including the EEOC. These alleged misrepresentations concerned the Hayes and Burton incidents and Ceslik's termination. Proceedings held before the EEOC and the Commission on Human Rights and Opportunities ("CHRO"), however, are quasi-judicial. *See Kelley v. Bonney*, 221 Conn. 549, 606 A.2d 693 (1992) (The immunity for statements in judicial proceedings "extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts[,] which are regarded as judicial or quasi-judicial, in character." *Id.* at 703 (citation omitted) (quoting *Petyan*, 510 A.2d at 1338–39)).

Accordingly, the defendant is entitled to summary judgment on these claims.

### F. First Amendment Claim

 The court infers that Ceslik attempts to bring his First Amendment claim pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring a claim if he alleges "(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir.1994) (quoting *Dwares v. City*

*of New York,* 985 F.2d 94, 98 (2d Cir.1993), *overruled on other grounds* ). For a private actor to have acted under color of state law, a state actor must have significantly encouraged it or wielded its power of coercion over it. *See Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir.1996).

■ Miller Ford was not acting under color of state law. It is a privately owned car dealership, and there is no evidence that any state actor encouraged or coerced it to deprive Ceslik of his First Amendment rights. Therefore, the defendant is entitled to summary judgment on this claim.

### G. Claims Against Paul Miller

Ceslik asserts claims against Miller. Miller, however, is not a defendant, and the court previously denied Ceslik's motion to join Miller as a defendant. (*See* Endorsement Order (Doc. No. 107).) Therefore, Ceslik's claims against Miller are being dismissed.

### H. Allegations that Fail to State a Claim

Ceslik does not cite any federal or state law that creates any cause of action, not discussed above, against Miller Ford. Allegations concerning the fabrication of documents, failure to maintain Ceslik's employment file, failure to provide a pink slip upon termination, failure to follow company policy in firing Ceslik, pretextual reasons for firing Ceslik, the Unemployment Compensation Commission's findings, and the EEOC findings are not supported by law. Thus, these claims fail to state a claim upon which relief can be granted and are being dismissed.

### I. Remaining State Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state law] claim ...

if ... the district court has dismissed all claims over which it has original jurisdiction." "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ While dismissal of the state law claim is not mandatory, *Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. 614. *See also DiLaura v. Power Auth. of the State of New York,* 982 F.2d 73, 80 (2d Cir.1992); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664–65 (2d Cir.1988); *Indep. Bankers Ass'n of N.Y. State, Inc. v. Marine Midland Bank,* 757 F.2d 453, 464 (2d Cir.1985). Because the court is granting summary judgment as to, *inter alia,* all the plaintiff's claims over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over all remaining state law claims.

### IV. CONCLUSION

For the reasons set forth above, defendant Miller Ford, Inc.'s Motion for Summary Judgment (Doc. No. 549) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.